[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The complaint seeks the dissolution of a marriage. In reality, it is the termination of a long between two young people.
The parties met when they were both teenagers and soon thereafter started living together. On January 4, 1991, when the defendant was 19 years old, their union produced a daughter, Samantha. For the next six years their relationship continued with the plaintiff living with the defendant some of the time and with his mother at other times. The parties differ as to the exact amount of time they lived together. The defendant and the child received public assistance during that period, and therefore, the plaintiff's living full time with the defendant would have reduced her benefits. This appears to be a factor in the plaintiff's CT Page 9896 recall as to the actual amount of time they spent together.
On July 4, 1997, the parties intermarried in Walworth, New York. The plaintiff candidly testified he married the defendant to "do the right thing." The "honeymoon" period was brief. Within three months, the parties separated on at least two occasions over differences about money. Their on again, off again times together continued until the plaintiff moved to Connecticut in April, 1999 to seek employment. The defendant, at the plaintiff's request, followed him. Within one week thereafter yet another argument ensued with the police involved. The defendant, with their daughter, left the plaintiff in April 1999 and moved to Pittsburgh, Pennsylvania where she presently resides.
The plaintiff has resided continuously in this state for the past three years, and all statutory stays have expired. The court has jurisdiction to dissolve this marriage and to enter financial orders. However, it does not have jurisdiction as to the issues of custody and visitation. The child of the parties, Samantha, has resided for the last two years with the defendant in the state of Pennsylvania. Therefore, that is her "home state" under the Uniform Child Custody Jurisdiction and Enforcement Act.
The parties stipulated at the commencement of trial that a hearing had previously been held on the questions of custody and visitation. The Court of Common Pleas, Washington County, Pennsylvania ordered that the parties have joint legal custody, with physical custody awarded to the mother. (Defendant in this case). A visitation schedule was also ordered. This court has entered the orders that hereinafter follow with the consideration of this custody order.
The parties have stipulated in writing that this marriage has irretrievably broken down. The evidence clearly confirms this. Judgment may enter dissolving the marriage on that ground.
The plaintiff, age 30, enjoys good health. He attended college for four years but failed to obtain a degree. He currently is employed in Stamford by Pitney Bowes as a database manager, primarily responsible for data base security.
The defendant, age 29, is in generally good health, but has been treated for sometime for depressions. She, after receiving some educational training, is employed as a franchise paralegal with General Nutrition Centers, in Pennsylvania. She recently obtained this job and is on probation until October, 2001.
Many reasons were offered as to the causes of the breakdown of this relationship. Numerous arguments took place over money and infidelity. CT Page 9897 There were instances of physical abuse with police involvement on many occasions.
The parties must each share some responsibility for their failed relationship that they attempted to save by getting married. This is a classic case of two immature young people trying to act like mature adults and not quite making it. They are commended for trying "to do the right thing" by marrying. However, it really was an unrealistic and weak attempt to solve the many problems they encountered in the several years before marriage.
The resolution of the financial issues involving this dissolution would be unremarkable but for the presence of the child of the parties. The minor child, Samantha, who presently is 10 years old, was born with a skin disease. It has been diagnosed as cutaneous T-cell lymphoma, possibly a form of non-Hodgkins disease and possibly may be a form of a rare cancer. As a result, the child needs much medical attention. The defendant is required to take the child for visits to doctors and hospitals. She is scheduled to be examined and possibly treated at John Hopkins University in Baltimore, which is some distance from the defendant's residence in Pennsylvania. These medical problems create more responsibilities for the parents than normally would be the case with healthy children.
The court has carefully considered the criteria set forth in General Statutes, Sections 46b-62, 46b-81, 46b-82 and 46b-84 and Section 46b-215a
of the Child Support Guidelines in reaching the decisions reflected in the orders that follow.
The following orders may enter:
(1) Alimony
As previously indicated, this was a recognized marriage in name only. Only by going through a ceremony was this relationship turned into a marriage. After the marriage, the parties lived together for insignificant periods of time. Based on the criteria of Section 46b-82 of the General Statutes, no periodic alimony is warranted. No periodic alimony is awarded to either party.
(2) Child Support
The plaintiff earns $87,000 per year, gross with a net of $61,000. The defendant earns $30,000 per year, gross, a net of $23,000. Based on the Connecticut Child Support Guidelines, the plaintiff's obligation for child support is $152 per week. CT Page 9898
Due to the medical problems of the minor child, as indicated earlier, a deviation from the presumptive support amount is appropriate. There are extraordinary expenses for the care and maintenance of the child (deviation criterion 2) and extraordinary parental expenses (deviation criterion 3). The child has special needs to obtain medical examinations and treatments. The custodial parent will be required to transport the child for treatments which will require, in addition to times lost from work, travel and lodging expenses in areas where distant medical facilities are located.
A. Commencing the month of August, 2001, the plaintiff shall pay child support to the defendant at the rate of three hundred ($300) dollars per week. Since the plaintiff is paid bi-weekly, the sum of six hundred fifty ($650) dollars shall be due at the time each wage payment is made to him. The payments shall continue until the child's death, emancipation or her reaching majority, subject to the provisions of Section 46b-84 (b) of the General Statutes, whichever event first occurs.
An immediate wage withholding order may enter with payment through the State Disbursement Unit.
B. The plaintiff shall maintain comprehensive medical and dental insurance for the benefit of the minor child. Section 46b-84 (e) of the Connecticut General Statutes shall apply. The defendant shall be responsible for the payment of the first $100 of unreimbursed or uninsured medical and/or dental expenses per year. All remaining unreimbursed or uninsured medical and dental expenses shall be divided, and 54% shall be paid by the plaintiff and 46% by the defendant.
C. The parties shall share responsibility for the payment of all qualifying costs of child care. The plaintiff shall pay 54% of such costs, and the defendant shall pay 46%. The plaintiff shall make his contribution directly to the defendant within seven days after receiving a copy of the invoice furnished by the child care provider.
D. The defendant shall be entitled to take the minor child as a dependency exemption for income tax purposes.
E. On November 28, 2000, the defendant, with the agreement of the plaintiff:, pursuant to General Statutes Sections 46b-71, et seq. certified for domestication in Connecticut a support order previously issued in the Court of Common Pleas of Washington County, Pennsylvania. The order was dated August 31, 1999 and was effective as of July 20, 1999 and provided for support of the defendant and the minor child of the parties. CT Page 9899
Thereafter, the defendant moved to modify the existing order. On February 5, 2001, the court approved the stipulation of the parties and ordered the plaintiff to pay $196 per week as child support and $120 per week periodic alimony pendente lite. The court found the plaintiff to owe an arrearage of $1,090 and payment of that obligation was to be held in abeyance until the trial of the dissolution of marriage action.
The plaintiff shall pay the defendant the arrearage of $1,090 by September 1, 2001.
F. The Support Enforcement Division has been collecting the previously ordered support payments from the plaintiff since April 18, 2001. This was as a result of an interstate referral from the State of Pennsylvania. Any support arrearages due for the period between April 18, 2001 through July 31, 2001 shall be assessed and collected by the Support Enforcement Division through the Family Support Magistrate Division.
(3) Insurances
 A. The plaintiff shall cooperate with the defendant in her efforts to remain on the plaintiff's medical and dental health insurance plan for the COBRA period, at the defendant's sole cost and expense.
B. The plaintiff shall provide life insurance on his life in the face amount of a minimum of $75,000, designating the minor child as the sole irrevocable beneficiary until the plaintiff's obligation for child support terminates. The plaintiff shall annually furnish the defendant proof of said coverage.
(4) Miscellaneous Orders
 A. The plaintiff shall retain his Jeep, furnishings, bank and credit union accounts and his Dyn-O-Mat, Inc. stock.
 B. The defendant shall retain her Ford automobile and her personal furnishings.
 C. Each party shall be solely responsible for her/his own debts as listed on her/his financial affidavit. They shall indemnify and hold harmless the other from any liability thereon.
 D. Each party shall pay his/her own legal fees.
Judgment may enter accordingly. CT Page 9900
NOVACK, JUDGE TRIAL REFEREE